Bobby F. STEVENS et al., Appellants,

v.

BOWIE NATIONAL BANK OF BOWIE,
Texas, et al., Appellees.

No. 17268.

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 17, 1971.

Rehearing Denied Jan. 14, 1972.

W. John Allison, Jr., Hassell & Riley, and J. W. Hassell, Jr., Dallas, for appellants.

Jack Connell, Bowie, for appellees.

## OPINION

MASSEY, Chief Justice.

Bobby F. Stevens and W. John Allison, Jr., sued Bowie National Bank of Bowie, Texas, and its president, Franklin Wilson. Objective of the suit was to set aside a certain sale conducted by a trustee under Deed of Trust on April 6, 1971, for a money amount as damages because of expense to recover the property, and in the alternative to "remove cloud on title" by a "pretended" Trustee's Sale. The defendants filed their motion for summary judgment on plaintiffs' whole case. Following a hearing summary judgment was rendered for the defendants. Plaintiffs appealed.

Reversed and remanded.

Since the defendants' brief is devoted to the contention that plaintiffs were without standing to bring and prosecute their suit, having no justiciable interest which could entitle them to relief at the hands of the courts, we will first discuss that question.

John Allison, Jr., is an attorney practicing in Dallas County, Texas. He was employed by Bobby F. Stevens to perform services for him, and in compensation Stevens, by warranty deed of March 23, 1971, conveyed title to certain realty in Montague County, Texas, to Allison. The realty was encumbered by Deed of Trust mortgage securing a note in the original amount of $4,750.00, which had by payments made thereon according to its pro-

visions been reduced so that the approximate amount of $2,000.00 was the principal balance then owing. Said principal, with interest thereon as it accrued, was being retired by installment payments of $50.00 per month. Apparently the installments were payable on the 15th of each month since such was its description in the Deed of Trust. The note was not made part of the record. Proof as to dates or amounts of credits applied to the note was not made. The fact that it was ever in default was never settled for the only statement (that by a party at interest) that it was in default constituted a mere conclusion.

As part of the compensation payable by Stevens to Allison the former agreed to make subsequent payments at his own expense as they accrued and thereby to retire the entire mortgage balance. In other words Allison was to receive from Stevens the real estate without any assumption of the indebtedness for which it was mortgaged as security.

The indebtedness in question had existed for a number of years and was originally created by a predecessor in the chain of title. It had been in 1968 that Stevens acquired the property, pursuant to a transaction by which he had assumed the obligation of the note and Deed of Trust mortgage. Prior to March 2, 1971, the Bowie National Bank had acted as the collection agent for a Mr. Ford, the owner and holder of the note, but on that date it purchased the note and became its owner and holder in Ford's stead. On March 8, 1971, Mr. Wilson, the president of the Bank, advised Stevens of such fact. However, Mr. Wilson did not tell Stevens that the Bank had elected to treat the note as in default, and that it intended that on that day there be a post of notices for a Trustee's Sale of the property, or that such had already been posted.

Apparently Stevens owed a separate and additional indebtedness to the Bank. It could be inferred (but not on summary

judgment) that the Bank received the $50.00 payment from Stevens in February, 1971, and applied it to the indebtedness mentioned rather than to the note secured by mortgage and Deed of Trust. The same might be said of Stevens' March payment, the same day that he was told that the Bank had purchased the note from Ford. In any event, by the Bank's records, it was made to appear that such note was in default; that by the provisions of the Deed of Trust the Bank, pursuant to its purchase of the note, was lawfully entitled to have the property posted for sale by the trustee and disposed of at a Trustee's Sale. Such a sale did occur on April 6, 1971. The Bank purchased the property from the Trustee for the amount it treated as the principal balance owing.

On April 6, 1971, the very day of the Trustee's Sale, Stevens learned of its occurrence. He went to the Bank and to Wilson immediately. He learned of what he claims to have been the Bank's misapplication of those payments made by him with the intention that they be credited on the note, of which intention he claims the Bank was aware when the payments were made in February and March. He informed Allison. On April 13, 1971, while the Bank still held such title as was received by the deed from the trustee, the plaintiffs filed suit.

(Under our present laws it is possible for an interested party to lose his rights in property without having had any true chance to protect his interest. Such condition exists because of absence of effective notice of sales under powers granted in many Deeds of Trust. This is a legislative rather than a judicial problem, and recently there have been bills introduced directed thereto, though none have passed. An excellent article upon the situation appears in Texas Law Review, Vol. 49, No. 6 (November, 1971) by David P. Cotellesse, entitled "Nonjudicial Foreclosure Under a Deed of Trust: Some Problems of Notice".)

Having warranted the title to the property which was the subject of foreclosure, though he had divested himself of the title by his transfer to Allison, Stevens had a justiciable interest entitling him to bring and maintain his suit. Of course, Stevens was injuriously affected for other reasons. See, generally, 39 Am.Jur., p. 859, "Parties", Sec. 10, "Interest to Support Suit"; 39 Tex.Jur.2d, p. 217, "Mortgages and Trust Deeds", Sec. 157, "Who may attack sale".

Pleading of the cause of action by both Stevens and Allison might appear to be founded upon fraud rather than premised upon accident or mistake on the part of the Bank in application of the payment(s) delivered for the purpose of credit upon the note in question. The defendants apparently assert some benefit of the theory under which they assert plaintiff's cause of action to have been founded by their claim of a want of right to bring suit upon the ground of fraud. We need not discuss. Reference may be made to 25 Tex. Jur.2d, p. 665, et seq., "Fraud and Deceit", Sec. 35, "Concealment".

It is apparent from the affidavits appended to the Response to Defendants' Motion for Summary Judgment that the pleadings might be readily amended for purposes of a trial on the merits on grounds of accident or mistake. Thereunder would be no question of plaintiff's right to maintain suit. If our memory is accurate counsel so conceded at time of argument. In summary judgment proceedings the Court will look "through and beyond the pleadings" in the determination of the existence of a litigable controversy. Ordinarily, therefore, the state of the pleadings at time of the hearing does not have the significance which would obtain at the time of a trial on the merits and in the present instance we attach no particular importance to them. Therefore, we need not greatly concern ourselves with the defendants' contentions that Stevens has no justiciable interest in prosecution of the suit merely because of the state of the pleadings. 4

McDonald's Texas Civil Practice, "Judgments", Sec. 17.26.5, "Summary Judgment — (New)— —(IV) Determination of Motion on Matters Outside Pleading"; Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233, 237 (1956).

Allison likewise had a justiciable interest, entitling him to remain in the suit, for he was injured through loss of title by reason of the defendants' accident, mistake, etc. Additionally, if the Bank should ultimately prove to have been successful in acquiring title to the property pursuant to its purchase at the Trustee's Sale, then Allison's compensation from co-plaintiff Stevens may not be as he expected and contracted. It may be that all the right he would have would be the amount which Stevens had contracted to pay in the future to retire the indebtedness of the note. Speculatively he might have an additional claim against Stevens on the theory that the latter had breached some fiduciary duty attendant to his status as agent—to Allison as his principal—whereby Allison suffered the loss of his interest in the title. This is a further basis for Stevens' justiciable interest. However, and in any event he has a justiciable cause of action in equity. He admittedly suffered injury flowing from misapplication of funds delivered to the Bank as the result of what is or may be contended to have been the Bank's accident, or mistake, or intentional act under circumstances by reason of which it was or should have been "on notice" that Stevens' act or omission (either for himself or as the agent of Allison) was in consequence of Stevens' mistake of fact in the justifiable belief that the application would be to the note which the Bank had purchased from Mr. Ford. Having been injured in consequence Allison is entitled to maintain his suit for remedy.

On the matter of rights and duties of banks as applied to application of deposits made for purposes of credit, see 8 Tex. Jur.2d, p. 401, et seq., Sec. 222, "Where deposit special or for specific purpose",

and the subsequent sections discussing matter of similar import.

■■ On the question of the proof introduced in support of the Motion for Summary Judgment: Save for documentary evidence consisting of filed papers relating to transfers of title and the Deed of Trust the only evidence in support of the motion was by the defendant Franklin Wilson, president of the defendant Bank. The note which was claimed to have been in default was not made a part of the record. Furthermore, there is not proof of default. The only reference in the record is Wilson's conclusion that the note was "in default". Such conclusion is not evidence, even when expressed by a disinterested witness. Wilson is an interested party. Ordinarily such proof from an interested party is insufficient to support summary judgment and that is true in the present instance. The deficiency in the proof of defendants, who moved for summary judgment, which is a consequence of such interest on the part of their only affiant is not remedied by any matter in the response made to the motion by the plaintiffs.

A recent decision by this Court in relation to our summary judgment procedure, burdens attendant thereto, etc., is of considerable consequence. Stover v. Concrete Sawing and Sealing Corporation, 440 S.W. 2d 422 (Fort Worth, Tex.Civ.App., 1969, writ ref., n. r. e.). The author of the instant opinion filed a dissent to the law as declared by the majority of the court. Premise for my dissent was the belief, at that time, that the law which would control disposition of a case had it been tried on the merits should control the disposition of it on motion for summary judgment; that the plaintiff who seemed to have, as of the time of the summary judgment hearing, been powerless to establish agency the defendant, as movant, was entitled to a "take nothing" judgment by force of law, exactly as would be the case in a trial on the merits upon a defense motion for

instructed verdict at close of the introduction of plaintiff's testimony. By its "N.R.E." stamp on the petition for Writ of Error the Supreme Court necessarily decided that the writer was in error and that this Court's majority correctly understood the law. In accord is Stuart v. Stuart, 429 S.W.2d 163 (Houston (14), Tex.Civ.App., 1968, writ ref., n. r. e.).

Therefore, in its material aspect the situation here is identical to the situation in Stover. Here, as there, application of the tests of propriety of the judgment by proof reveals that the Motion for Summary Judgment should have been denied. Since it was the defendants who moved for summary judgment the plaintiffs did not have to prove anything. Since the proof of the material elements essential to establish summary judgment propriety was by the affidavit of an "interested witness" facts therein purported to be established could be disbelieved had the case been one on trial and would be treated as disbelieved for purposes of summary judgment. That being true the summary judgment should not have been rendered by the trial court. In other words the situation presented is one where the movants for summary judgment have not discharged that *negative* burden of showing as a matter of law that plaintiffs have no cause of action against them. 4 McDonald's Texas Civil Practice, Cumulative Supplement, "Judgments", Sec. 17.26.1, "(New) —B. When Summary Judgment Proper."

Had the appeal under consideration in this Court and the Supreme Court in Lucky Homes, Inc. v. Tarrant Savings Ass'n, 379 S.W.2d 386 (Fort Worth, Tex. Civ.App., 1964, reversed) been from a summary judgment the decision of this Court would have been correct—upon the theory of the majority in Stover, as discussed in the preceding paragraph. Since it was an appeal from a trial on the merits the Supreme Court reversed. Tarrant Savings Association v. Lucky Homes, Inc., 390 S. W.2d 473 (Tex.Sup., 1965). Ultimate judgment in the case depended upon the

proper placement of the burden of proof relative to the propriety or impropriety of a foreclosure sale. One who attacks propriety of such ordinarily would have the burden of proof to establish impropriety of the procedure purporting to validate such on a trial on the merits of his case, but, if the opposing party in such a case moves for summary judgment, his would be the burden to indisputably establish that a *prima facie* case could not be made out by the respondent by any proof of impropriety. In the instant case it is to be observed from the affidavits appended to the plaintiffs' Answer to Motion for Summary Judgment that they assert such an impropriety.

Judgment is reversed and the cause remanded for trial on the merits.